UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT LESANE,

        Petitioner,

                              Case Number 08-12828

v.                                                Honorable David M. Lawson

BLAINE LAFLER,

        Respondent.
_____/

## OPINION AND ORDER GRANTING PETITIONER'S MOTION TO SUPPLEMENT AMENDED PETITION AND DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Scott LeSane was convicted by a jury in the Wayne County, Michigan circuit court of second-degree murder, assault with intent to commit great bodily harm less than murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony and sentenced to prison terms totaling thirty years. He filed a petition for writ of habeas corpus against the warden of the Thumb Correctional Facility in Lapeer, Michigan alleging that he is in custody in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution because the trial court did not instruct the jury on a lesser included offense, and his trial attorney was constitutionally ineffective. The respondent argues that the petitioner's claims lack merit, are not cognizable on habeas review, or are procedurally defaulted. The Court finds that the petitioner's claims do not warrant granting the writ of habeas corpus. Therefore, the Court will deny the petition.

I.

The petitioner was charged with first-degree (premeditated) murder, three counts of assault with intent to commit murder, possession of a firearm during the commission of a felony (felony firearm), and felon in possession of a firearm. The charges arose from

> a shooting incident in Detroit on July 4, 2003. The episode began when [the petitioner] encountered Howard Levar Smith outside a convenience store. The men exchanged angry looks, and Smith slapped a bottle out of [the petitioner's] hand. [The petitioner] pulled a semiautomatic handgun from his pants and began shooting at Smith, who was standing in front of the door of the store. Smith was wounded in the knee and thigh. [The petitioner] also wounded two customers in the store, Porsche Thomas and Dennis Nix. Another customer, Thomas Turner, was shot and killed.

*People v. Lesane*, No. 256493, 2005 WL 2758002, *1 (Mich. Ct. App. Oct. 25, 2005) (unpublished).

The following additional facts were adduced at trial. Anton Rogers testified that he walked to the Wyoming Mini Mart with his cousin, David Hall, and his girlfriend, Porsche Thomas, about 11:30 p.m. on July 4, 2003. He saw Howard Smith slap a bottle of liquor out of the petitioner's hand outside the store. Then the petitioner pulled a gun from his waistband. As Smith ran inside the store, the petitioner pointed the gun in the direction of the store and fired at least five times. Rogers heard his girlfriend screaming for him from inside the store. He went inside and saw his girlfriend bleeding from her leg. Howard Smith and a man at the other end of the store had been shot, and a man at the entrance of the store had his head split open. Rogers did not know where the petitioner went, and when the police arrived Rogers stated that he did not know who had done the shooting because he was frightened at the time. He subsequently recognized the petitioner in a photographic lineup, but he was still scared and declined to identify anyone in the array. At the preliminary examination, Rogers had a change of heart after being placed under oath and identified the petitioner as the shooter. He testified that there was no doubt in his mind that the petitioner fired the gun on July 4, 2003.

Porsche Thomas testified that she was inside the store when a male voice called Anton Rogers outside. Anton and Howard Smith then went outside. As she started to walk out of the store, the door opened and Howard Smith came running inside. She heard five or six gunshots and was shot in the leg. The man who ultimately died from the gunfire was in front of her at the time. Howard Smith and another man also were shot, but she could not see who was shooting.

Howard Smith testified that he encountered the petitioner outside the mini mart on July 4, 2003. He made eye contact with the petitioner and then slapped him because of a prior dispute. The petitioner hesitated, backed up, pulled a pistol out of his waistband, aimed the gun at him, and fired. The petitioner shot at him a second time as Smith backed into the store. Smith heard four or five gunshots and was shot two times. Initially, he did not tell the police who shot him because he wanted to handle the matter himself. When he heard that someone had died, he identified the petitioner in a photographic array. There was no doubt in his mind that the petitioner was the shooter.

A county medical examiner testified that Thomas Turner died from two gunshot wounds and that the manner of death was homicide. The parties stipulated that all the slug- and cartridge-evidence at the crime scene came from the same weapon.

The petitioner testified that he was at his brother's house on July 4, 2003, and was nowhere near the Wyoming Mini Mart that night. He claimed that he did not possess a handgun at the time, did not fire a handgun, and did not shoot anybody. Although he learned several months after the incident that he was wanted for the crime, he did not turn himself in to the police because he figured that he was not guilty and that the police would catch the real criminal. He was arrested at his mother's house in February of 2004.

On May 20, 2004, the jury found the petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317 (a lesser-included offense of first-degree murder); three counts of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84 (lesser-included offenses of assault with intent to commit murder); felony firearm, Mich. Comp. Laws § 750.224b; and felon in possession of a firearm, Mich. Comp. Laws § 750.227f. The trial court sentenced the petitioner to two years in prison for felony firearm, followed by concurrent prison terms of 30 to 60 years for murder, six years and eight months to 10 years for each assault conviction, and 40 to 60 months for being a felon in possession of a firearm.

On his direct appeal, the petitioner argued that (1) the district court erred in finding sufficient evidence to bind him over for first-degree murder, (2) trial counsel was ineffective by failing to request an instruction on voluntary manslaughter, and (3) he was denied his right to counsel at a critical stage of trial. The Michigan Court of Appeals affirmed the petitioner's convictions in an unpublished decision, *see Lesane*, 2005 WL 2758002, and on April 28, 2006, the Michigan Supreme Court denied leave to appeal, *see People v. Lesane*, 474 Mich. 1124, 712 N.W.2d 463 (2006).

The petitioner subsequently filed a motion for relief from judgment in which he alleged that: (1) the trial court deprived him of due process when it denied his motion for a directed verdict of acquittal and allowed the jury to consider the charge of first-degree murder; (2) trial counsel was ineffective by failing to move for the production of witnesses who would have supported the petitioner's alibi defense and failing to move to suppress a suggestive pretrial identification; (3) the trial court violated his right to due process by instructing the jury that it could infer premeditation from the use of a deadly weapon; and (4) the cumulative effect of the prosecutor's acts of misconduct deprived him of a fair trial. The trial court denied the petitioner's motion, and the

Michigan Court of Appeals denied leave to appeal on the ground that the petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Lesane*, No. 279101 (Mich. Ct. App. Jan. 11, 2008). The petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but on March 28, 2008 that court rejected his filings because they were submitted out of time per Michigan Court Rule 7.302(C)(2).

The petitioner filed a habeas corpus petition in this Court on July 2, 2008 alleging that: (1) the trial court deprived him of due process by denying his motion for a directed verdict of acquittal where the evidence was insufficient to support the charge of first-degree murder; (2) trial counsel was ineffective by failing to request a jury instruction on voluntary manslaughter; (3) the prosecutor's opening statement and closing arguments deprived him of a fair trial; and (4) the trial court's jury instruction that premeditation could be inferred from the use of a deadly weapon deprived him of a fair trial. In his answer, the respondent argued that the petitioner's first claim raised an uncognizable state law issue; trial counsel was not ineffective by not requesting a manslaughter instruction because the evidence did not support it; and the petitioner procedurally defaulted his third and fourth claims by not raising them on direct appeal.

The petitioner subsequently moved to strike his habeas petition and to substitute in its place an amended petition and supporting brief. The Court granted the motion and accepted the amended petition and supporting brief in place of the petitioner's original filing. The claims in the amended petition are:

> The state courts were incorrect when they found that there was not adequate provocation to support a request for manslaughter and counsel was ineffective for not doing so.
>
> A.    Adequate provocation was apparent on the record at preliminary examination and Petitioner's trial.

      B.      Trial counsel was ineffective for not requesting the lesser included offense of manslaughter.

Amend. Pet. at 9, 10, 15.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.

The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner alleges that there was sufficient evidence of provocation at the preliminary examination and at trial to support a jury instruction on the lesser offense of manslaughter. The Court notes in passing that the evidence adduced at the preliminary examination has little to do with whether the state court should have instructed the jury on a lesser offense at trial. The failure to give a lesser included offense instruction can violate the Due Process Clause, but only if the *trial* evidence could convince the *jury* that the lesser offense was committed instead of the greater one. *See Beck v. Alabama*, 447 U.S. 625, 636-38 (1980); *see also Campbell v. Coyle*, 260 F.3d 531, 541

(6th Cir. 2001) (stating that "a *Beck* instruction is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater" (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982))). It is important to note that the Supreme Court has not applied the *Beck* line of cases to non-capital crimes.

The Michigan Court of Appeals determined that the evidence at trial did not support a manslaughter instruction. The court stated:

> A jury instruction on a lesser included offense is appropriate if all the elements of the lesser offense are included in the greater offense and if a rational view of the evidence supports the instruction. *People v. Nickens*, 470 Mich. 622, 626; 685 NW2d 657 (2004). The elements of manslaughter are included in the offense of murder. *People v. Mendoza*, 468 Mich. 527, 540-541; 664 NW2d 685 (2003). Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given upon request if supported by a rational view of the evidence. *Id.* at 541, 545.
>
> Common-law voluntary manslaughter is an intentional killing "committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition." *Mendoza*, *supra* at 535. The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes a defendant to act out of passion rather than reason. *People v. Sullivan*, 231 Mich.App 510, 518; 586 NW2d 578 (1998). The provocation must be that which would cause a *reasonable person* to lose control. *Id.* (emphasis in original).
>
> Smith's act of slapping a bottle out of defendant's hands is not provocation sufficient to cause a reasonable person to lose control and react by repeatedly firing a gun. Consequently, a rational view of the evidence did not support a manslaughter instruction. See *Mendoza*, *supra* at 541.

*People v. Lesane*, 2005 WL 2758002, at *2.

As a matter of state law, the court of appeals found the jury instruction unwarranted. "In order to receive habeas corpus relief from incorrect jury instructions, [the petitioner] must show that they were so infirm as to render the entire trial fundamentally unfair." *Slaughter v. Parker*, 450 F.3d

224, 237 (6th Cir. 2006) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). The Sixth Circuit has held that "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc)). This Court must conclude, therefore, that the instructional error suggested by the petitioner does not warrant habeas corpus relief, even if there was some evidence of provocation presented at trial.

But the petitioner has not successfully advanced the argument that the record contains such evidence. And the state court's gloss on that point is well supported by the record. The evidence could not have led the jury reasonably to conclude that the petitioner was guilty of manslaughter, but not second-degree murder, because the elements of second-degree murder were satisfied. The elements of second-degree murder are: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v. Smith*, 478 Mich. 64, 70, 731 N.W.2d 411, 414-15 (2007). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868, 878 (1998) (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304, 326 (1980)).

The element of malice distinguishes murder from voluntary manslaughter. *Smith*, 478 Mich. at 70, 731 N.W.2d at 414. "The elements of voluntary manslaughter are: '(1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions.'" *People v.*

-10-

*McMullan*, 284 Mich. App. 149, 156, 771 N.W.2d 810, 815-16 (2009) (quoting *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578 (1998)).

The trial evidence demonstrated that the petitioner fired a weapon multiple times toward Smith, and the fatal bullet struck another in its path. Taken in the light most favorable to the prosecution, the evidence established that the petitioner fired a gun several times into the Wyoming Mini Mart and shot four people. At least two of the gunshots hit Thomas Turner and caused his death. Under state law, an intent to kill may be inferred from the use of deadly force. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999) (holding that malice can "be inferred from [the petitioner's] use of a deadly weapon" and "from evidence that [he] intentionally set in motion a force likely to cause death or great bodily harm").

Moreover, the petitioner did not have lawful justification or an excuse for shooting Smith. As explained by the Michigan Court of Appeals, Howard "Smith's act of slapping a bottle out of [the petitioner's] hands [was] not provocation sufficient to cause a reasonable person to lose control and react by repeatedly firing a gun." *Lesane*, 2005 WL 2758002, at *2.

Nor is this a case where the element of malice was hotly contested. The petitioner's defense was that he was elsewhere when the crime was committed. An instruction on the lesser-included offense of manslaughter, based on the theory that the petitioner lacked the intent necessary for murder, would have been inconsistent with the defense that he did not participate in the crime. The Court concludes, therefore, that even if the petitioner's jury instruction claim could support the issuance of a writ of habeas corpus, the failure to give a manslaughter jury instruction did not offend the Constitution.

B.

The petitioner next argues that his trial counsel was ineffective by failing to request a jury instruction on manslaughter. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that defense counsel was not ineffective because the trial evidence did not justify the manslaughter instruction, and, "[b]ecause trial counsel is not required to advocate a meritless position, defense counsel did not err in failing to request the instruction." *People v. Lesane*, 2005 WL 2758002, at *2.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111---, 129 S. Ct. 1411, 1419 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and therefore the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained recently:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ---, ---, 130 S. Ct. 1473, 1485 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ---, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether

-12-

>there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 131 S.Ct. at 787-88.

The petitioner's argument that his trial attorney was ineffective by failing to request a jury instruction on manslaughter does not surmount that high bar. As discussed above, the evidence did not support a jury instruction on manslaughter because Howard Smith's act of slapping a bottle out of the petitioner's hands was not adequate provocation to mitigate the charged crime from murder to manslaughter; and the state court's holding to that effect was not unreasonable. Furthermore, it was reasonable strategy for defense counsel not to request a jury instruction on voluntary manslaughter, because the petitioner's defense was that he was not present when the victims were shot. Asking the jury to consider whether the petitioner was provoked into committing the crime would have been inconsistent with the alibi defense and might have confused the jury. The Court therefore concludes that the state courts determined correctly that defense counsel was not ineffective for failing to object to the jury instructions as given or for failing to request a jury instruction on manslaughter.

C.

The petitioner recently filed a motion to amend his petition once again in this Court by adding an issue raised on direct appeal in state court relating to the denial of counsel but inadvertently omitted from his federal filings. The respondent has not answered that motion, and it appears that the petitioner exhausted the claim on direct appeal in state court. The petitioner contends that he was denied counsel in violation of the Sixth Amendment because the trial judge entertained a question from the jury during deliberations without his trial counsel being present, but

-13-

when the petitioner was represented by substitute counsel. The petitioner argues that he was denied his right to counsel at a critical stage of the proceedings in state court, and he need not show prejudice under the rule in *United States v. Cronic*, 466 U.S. 648 (1984).

The state court of appeals decided that issue against the petitioner on his direct appeal on the ground that the petitioner consented to the other lawyer standing in for his attorney while the trial judge (also a substitute for the presiding judge, who was absent due to a dental emergency) re-read certain instructions to the jury and answered scheduling questions. The court of appeals explained:

> The Sixth Amendment guarantees the accused in a criminal prosecution the right to the assistance of counsel for his defense and applies to the states through the Fourteenth Amendment. US Const, Am VI; *People v. Crusoe*, 433 Mich. 666, 684 n.27; 449 N.W.2d 641 (1989). The complete denial of counsel at a critical stage of a criminal proceeding is structural error requiring automatic reversal, even without the showing of actual prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984); *People v. Duncan*, 462 Mich. 47, 51-52; 610 N.W.2d 551 (2000). In *People v. Johnson*, 215 Mich. App 658, 665-666; 547 N.W.2d 65 (1996), this Court held that the trial court violated the defendant's constitutional right to counsel by removing his original counsel and appointing substitute counsel without the defendant's consent. The Court further held that this constitutional error required a new trial, regardless of whether the defendant could show prejudice. *Id.*
>
> Here, however, defendant consented to the substitution of counsel. Although he initially stated that he preferred to wait for his own attorney, he agreed to the substitution after the trial court explained that it was only going to read back some instructions. The record does not support defendant's claim that the trial court "extracted" a waiver by pressuring defendant to accept the substitution. On the contrary, the record discloses that the trial court repeatedly informed defendant that it would wait for his attorney if that was what he wanted. Accordingly, this case is factually distinguishable from *Johnson*. Additionally, in *Hudson v. Jones*, 351 F.3d 212, 216-18 (CA 6, 2003), the Sixth Circuit held that the verbatim repetition of jury instructions is not a critical stage of the proceedings, and that prejudice would not be presumed where defense counsel was not present when the trial court repeated the instructions.

*People v. Lesane*, 2005 WL 2758002, at *2-3.

It is true that the Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused[,] during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. However, as the Michigan Court of Appeals mentioned — accurately — the trial court's act of repeating jury instructions in defense counsel's absence, when those already had been given to the jury in the presence of counsel, is not a critical stage of a criminal trial. *Hudson v. James*, 351 F.3d 212, 218 (6th Cir. 2003). The Sixth Circuit was careful to distinguish the act of repeating instructions already given from introducing supplemental instructions to the jury. The court distinguished *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), in which the trial judge gave a supplemental instruction in defense counsel's absence "to a thrice-deadlocked jury," where a *Cronic* violation was found. *Hudson*, 351 F.3d at 217. The *Hudson* court also referenced other circuits that followed the "new-versus-repeated distinction." *Ibid.* (citing *United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003); *Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir. 1997)). *Hudson* governs the disposition of the issue in the present case, as well.

In addition, the record bears out the state court's finding that the petitioner consented to the stand-in lawyer. The colloquy that took place on the morning of May 17, 2004:

> MR. WALHORN: Good morning, your Honor. Kenneth Walhorn on behalf of Mr. Lesane. I'm standing in for his attorney Mr. Lyle Harris. I believe that would be the Defendant's best interest, sir.
> THE COURT: Alright. Let the record reflect that my name is Judge David Groner. And I am a Circuit Court Judge. I was asked by Judge Allen to take any notes or verdict while the jury is deliberating because Judge Allen had a dental emergency. And he left and he'll be back. But he is not available at this time. So, I came down.
> And the Court has received first of all Mr. Lesane.
> THE DEFENDANT: Yes.
> THE COURT: Mr. Walhorn volunteered to stand in. Your lawyer apparently got tied up in another court. He won't be here for awhile. Do you have any

objection that Mr. Walhorn stands in? He has handled many capital cases in this building. Very respected lawyer. He understand the process. Any problem with him standing or would you rather wait for your lawyer?

THE DEFENDANT: I rather wait for my lawyer.

THE COURT: You rather wait for your lawyer?

THE DEFENDANT: Yes.

THE COURT: Okay. I don't know when he's going to get here. That's the problem. So we can - - let me explain to you what's going on right now. Okay. The jury has not reached a verdict. They have certain notes.

An they want to know I think they want some of these instructions read back to them. And there is a couple of other notes that have nothing to do with the case. It's about breaks and things like that.

So, what I'm going to do is read back the instructions. That's it.

If you want to wait for Mr. Harris, then we can wait for him. But he's not available right now. I don't know when he's going to be here.

THE DEFENDANT: Go ahead.

THE COURT: I'm sorry?

THE DEFENDANT: Go ahead.

THE COURT: Are you sure you want me to go ahead? I just want to make sure that you're consenting to it. I don't want to force you to do it. But like I said, Mr. Walhorn he knows Mr. Harris. He's done a lot of murder trials. And he understands what's going on here. I just want to make sure it's okay with you.

THE DEFENDANT: All right.

THE COURT: Okay. Mr. Walhorn, I just want to make sure that your client is consenting. I think he is. But you get that feeling as an officer of the court?

MR. WALHORN: Well, that's true, your Honor. I told him that what is going to happen here is okay with him is that you're just going to repeat word for word some of the instructions that were previously given to the jury.

THE COURT: Mr. Lesane, what I did is I got the lawyers together Mr. Walhorn and Mr. Coyle and I told them I want to read back exactly how Judge Allen read it. Not any different.

Trial Tr., May 17, 2004, at 1-3.

The Court finds that the state court accurately characterized the petitioner's reaction to the temporary substitution of counsel as consent. This Court finds no fault with the state court's determination that there was no denial of counsel at a critical stage of the case. The state court's decision was not contrary to or an unreasonable application of *Cronic*.

III.

-16-

For the reasons stated, the Court concludes that the state court decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts of the case. The petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

Accordingly, it is **ORDERED** that the petitioner's motion to supplement his petition by adding one additional ground for relief [dkt. #15] is **GRANTED**.

It is further **ORDERED** that the amended petition for writ of habeas corpus, as supplemented, is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 6, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 6, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL